UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERWIN LEJON-TWIN EL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JOE MARINO, Director, Human Resources, and<br>IMPAX LABORATORIES, f/k/a CarePharma,<br>　　　　　　Defendants. | Civ. No. 16-2292 (KM) (MAH)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

　　This *pro se* plaintiff brings an action against his employer, Impax Laboratories, and its Director of Human Resources, Joe Marino. (I will refer to the defendants collectively as "Impax.") At the center of the complaint (ECF no. 1, cited as "Cplt.") is a single, well-defined grievance. The plaintiff came to work at Impax under his birth name of Erwin Hilton; he currently goes by Erwin LeJon-Twin El; and Impax will not issue his paycheck in his currently preferred name. Plaintiff seeks a total of $2,982,000 in damages. Now before the court is Impax's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted. (ECF no. 12) For the reasons stated herein, the motion will be granted.

　　In general, people may go by whatever name they wish, so long as a name change is not used as a vehicle for fraud. Nevertheless, to change the name under which a person deals with the IRS or the Social Security Administration takes some doing, administratively speaking; a legal name change *via* state court procedures may be the best route. It does not appear that the plaintiff has either succeeded in registering his new name with the IRS and SSA, or that he has changed his name legally. Impax has agreed with the

1

plaintiff in writing that it will use his birth name in connection with payroll and tax matters, but that it will use his new name in all other contexts. Should plaintiff legally change his name, or otherwise induce the IRS and the SSA to deal with him under his new name, presumably Impax will have no quarrel with that. But for now, Impax persuasively argues that it has no choice but to process payroll and tax paperwork using the name under which the plaintiff is known to the federal government.

## I.  BACKGROUND

Plaintiff has been an employee of Impax since June 13, 2011. He initially came to work under what he calls his "constructed" name, Erwin Hilton. (Cplt. ¶ 29) On October 26, 2014, the plaintiff announced his "Free National Descent Name and Nationality as Moorish-American in the Moorish Science Temple of America." His name, he said, would henceforth be Erwin LeJon-Twin El. (*Id.*) He made a request of Impax "to be compensated in [his] Free National Name." (Cplt. ¶ 30)

On May 15, 2015, Plaintiff and Impax's Human Resources Director, Joe Marino, signed a memo in which Impax agreed to use the name Erwin LeJon-Twin El whenever possible. However, for "Federal I-9 and payroll tax purposes, Impax will continue to use the name Erwin Hilton as this is the name recognized by the Federal government for right to work and tax purposes." (Cplt. Ex. 3008) The Complaint alleges that the plaintiff supplied Impax with paperwork from the Social Security Administration and the IRS documenting his name change for federal tax purposes. (Cplt. ¶¶ 38–42) These documents, attached to the Complaint, do not in fact reflect the federal government's recognition of the plaintiff's name change for federal tax purposes.[1] Exhibit

---

[1]   Exhibits attached to or integral to a complaint are properly considered on a Rule 12(b)(6) motion.

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

2

6006 is a letter from the Social Security Administration declining the plaintiff's request for a change of his citizenship status. Exhibit 7007 is a "Dear Taxpayer" letter from the IRS stating that the agency would require an additional 45 days to respond to an unspecified request.

The Complaint alleges that the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Cplt. ¶ 44) That charge was dismissed. (Cplt. Ex. EEOC1)

On April 21, 2016, the plaintiff filed his complaint in this action. (ECF no. 1) It alleges a variety of claims, including National Origin Discrimination, Invasion Against Our Republican Form of Government, violation of the First and Fifth Amendments, Involuntary Servitude under the Thirteenth Amendment, the New Jersey Identity Theft Protection Act, Deprivation of Nationality in violation of the Universal Declaration of Human Rights, Deprivation to Petitioners' Attribute in violation of the Declaration of the Rights of the Child, Deprivation of Economic Rights in violation of the Declaration of the Rights of Indigenous Peoples, and Unreasonable Accommodation/

---

(3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'"); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In such a case, the document itself, rather than the complaint's description of it, must control:

> What the rule [permitting consideration of the document on which the complaint is based] seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

3

Intentional Discrimination/Peonage in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1994.

## II.  DISCUSSION

### A.  Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where a plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551

U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### B. Analysis

#### 1. Title VII and 42 U.S.C. § 1981

The plaintiff brought an EEOC complaint based on national origin discrimination, and he asserts a similar Title VII claim in his Complaint. Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination based on race, color, religion, sex, or national origin in the workplace. 42 U.S.C. § 2000e-2(a) *et seq.*; *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). To establish a claim of disparate treatment under Title VII, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the position; and (3) suffered an adverse employment action (4) under circumstances that give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).[2]

The plaintiff identifies himself as a Moorish-American National, or a Moorish Citizen. (*See* Cplt. ¶ 3) I will assume without deciding that this self-

---

[2] The Title VII claim must be dismissed against defendant Joe Marino in any case. The Third Circuit has long held that Title VII liability attaches to employers, not to individual supervisory employees. For example, in *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002), a former student brought suit under Title VII against a college, its president, its vice president of academic affairs, and members of the faculty and staff. The Third Circuit upheld dismissal of the claim against the individual defendants because "individual employees are not liable under Title VII." *Id.* at 190. *See also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("individual employees cannot be held liable under Title VII"); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("we are persuaded that Congress did not intend to hold individual employees liable under Title VII").

5

identification may be the basis for a claim of national-origin discrimination under Title VII.[3] The claim nevertheless fails because the Complaint does not allege that the plaintiff suffered a cognizable adverse employment action.

In general an actionable adverse action must be one that works a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998); *accord Moore v. Beers*, 121 F. Supp. 3d 425, 430 (D.N.J. 2015).

> Title VII and section 1981, therefore, do not provide relief for general unpleasantness that can occur in the workplace, even if that unpleasantness may be motivated by racial animus . . . .
>
> Termination, failure to promote, and failure to hire all constitute adverse employment actions. *See* 42 U.S.C. § 2000e–2(a)(1) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.").
>
> Similarly, actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions. *See de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (stating that reduced prestige and opportunity for professional growth, although "quite thin," are sufficient to show adverse employment action at summary judgment).
>
> Employment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to

---

[3] The Moorish Science Temple of America holds that its members are not citizens of the United States and that their birth names are "constructed" rather than "real." Followers have adopted names, frequently with the designation "Ali," "Bey," or "El" appended. *See United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003); *United States v. Darden*, 70 F.3d 1507, 1517 (8th Cir. 1995); *Bey v. The United States Dep't of Homeland Security*, Civ. No. 10-46, 2010 WL 1644807 (D.N.J. Apr. 23, 2010); *The Great Seal Moorish Science Temple of America, Inc. v. The State of New Jersey*, No. Civ. A. 05-CV-345, 2005 WL 2396311 (E.D. Pa. Sept. 28, 2005). The validity of such beliefs is not for me to consider here; the only issue here is whether the plaintiff has stated a recognized cause of action.

> constitute adverse employment actions. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (collecting cases stating that a "bruised ego;" a demotion without change in pay, benefits, duties, or prestige; and a reassignment to a more inconvenient job did not constitute adverse employment actions) (internal quotation marks omitted); *Galabya v. N.Y.C. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (stating that delay in reassignment, transfer to purportedly inferior facilities, and change in the type of students taught are not adverse employment actions); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 456 (7th Cir. 1994) (concluding that changes to title and reporting relationship are not adverse employment actions where plaintiff retained same grade level, benefits, and responsibility).

*Barnees v. Nationwide Mut. Ins. Co.,* 598 F. App'x 86, 90 (3d Cir. 2015).

The only adverse action here involves the name on the plaintiff's paycheck: his legal birth name, Erwin Hilton, as opposed to his recently adopted name of Erwin LeJon-Twin El. There is no contention that the plaintiff, under whatever name, is not being paid. No diminution in pay, responsibilities, or benefits is alleged. No employment-based harm is alleged at all. In concluding that there is no adverse employment action, I am guided by *Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 326 (3d Cir. 2015). *Jones* held that even a discipline-related suspension was not an adverse employment action, because it was a suspension with pay. *A fortiori,* paying the plaintiff under his birth name is not an adverse employment action.

Alternatively, the plaintiff may allege a "hostile work environment," consisting of a series of actions which may not themselves be individually actionable. Such a claim, however, requires discrimination that is "severe or pervasive." *Burlington,* 524 U.S. at 754, 118 S. Ct. at 2265; *accord Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir. 2006). No such allegation is made here.

Finally, I must consider the fact—documented in an exhibit attached to the complaint—that Impax reasonably felt itself bound to use the plaintiff's legal name in connection with reporting to the IRS or SSA. On May 15, 2015, Plaintiff and Impax's Human Resources Director, Joe Marino, signed a memo

7

agreement that Impax would generally deal with the plaintiff under the name Erwin LeJon-Twin El, but for "Federal I-9 and payroll tax purposes, Impax will continue to use the name Erwin Hilton as this is the name recognized by the Federal government for right to work and tax purposes." (Cplt. Ex. 3008) I set aside the fact that this agreement appears to waive the claims being made here, a factual matter that I will not resolve on this motion to dismiss. I consider only the undisputed fact that the federal authorities deal with the plaintiff using the name on his Social Security card; unless and until that changes, Impax has no choice but to follow suit for payroll and related purposes. *See, e.g.*, IRS Publication 15, available at https://www.irs.gov/publications/p15/ar02.html (instructing employers to "Record the name and SSN of each employee as they are shown on the employee's social security card . . . Continue to report the employee's wages under the old name until the employee shows you the updated social security card with the corrected name."). Plaintiff himself may apply to have IRS and SSA correct his name, or may obtain a legal name change using state procedures, but unless that is done, Impax cannot be liable in damages for using plaintiff's birth name.

In short, I cannot extract a plausible claim of national origin discrimination from these facts. The complaint, insofar as it asserts a Title VII claim, is dismissed.

### 2.   42 U.S.C. § 1981

The complaint cites a civil rights statute, 42 U.S.C. § 1981. Section 1981 prohibits racial discrimination in the making and performance of contracts:

8

**(a) STATEMENT OF EQUAL RIGHTS**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "MAKE AND ENFORCE CONTRACTS" DEFINED**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) PROTECTION AGAINST IMPAIRMENT**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

Section 1981 has given rise to a cause of action for employment discrimination. Setting aside distinctions not relevant here, it is entirely parallel to Title VII. *See Schurr v. Resorts Intern. 30 Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) ("In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim.").[4]

I will assume without deciding that plaintiff's self-identification as Moorish-American may give rise to a discrimination claim. As under Title VII, however, the plaintiff must plead a significantly adverse employment action. That requirement is not met by these allegations regarding the name on plaintiff's paycheck. *See* Section II.B.1, *supra* (citing *Barnees*, 598 F. App'x at 90 (discussing adverse employment action requirement under "Title VII and

---

[4] Section 1981 does not contain Title VII's requirement of administrative exhaustion or the limitation to employers of 15 or more persons. Section 1981 is by its terms limited to discrimination based on race, while Title VII has a longer list of protected categories. In cases where both statutes apply, however, they are parallel. *See* 3d Cir. Model Civil Jury Instructions 6.0, comment (observing that in a racial discrimination case asserting both a section 1981 and a Title VII claim, there will often be "no need to give two sets of instructions").

section 1981")). And as under Title VII, the employer's compliance with federal law regarding the reporting of Social Security and tax information cannot be regarded as a discriminatory practice.

The complaint is therefore dismissed insofar as it asserts a claim under 42 U.S.C. § 1981.

### 3. Other Constitutional/Civil rights statute claims

The complaint lists provisions of the U.S. Constitution and implementing civil rights statutes. The alleged Constitutional violations seem to center on citations to the First and Fifth Amendments. The cited statutes include 42 U.S.C. §§ 1983 and 1985.[5]

One obvious defect with the Constitutional theories arises from Impax's status as a private employer, not a governmental authority. The First and Fifth Amendments set forth rights that a citizen may assert against the government, not against a private party. *See Fogarty v. Boles,* 121 F.3d 886, 890 (3d Cir. 1997) ("[T]he First Amendment applies only to public employers."); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 205-08 (3d Cir. 2000) (holding that due process claims against a private employer fail due to absence of state action); *El-Bey v. Rogalski,* GJH-14-3784, 2015 U.S. Dist. LEXIS 36413, at *5 (D. Md. March 24, 2015) (dismissing Moorish Citizen's claim that "Defendant violated her due process rights by refusing to process her updated Form W-4" because "only governmental actors can violate constitutional due process rights."). Title 42, U.S. Code, Section 1983 is likewise directed against State, not private, action. *West v. Atkins,* 487 U.S. 42, 49 (1988) (citing *United States v. Classic,* 313 U.S. 299, 326 (1941)); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

---

[5] The complaint hyperbolically cites the Thirteenth Amendment, which abolished involuntary servitude, as well as 42 U.S.C. § 1994, an 1867 statute that abolished peonage, a form of quasi-slavery imposed on debtors. No facts are pled, or could be pled, linking the use of plaintiff's birth name on his paycheck to any form of slavery or forced labor. Just for starters, the plaintiff is being paid wages and may resign anytime he likes. The allegation of slavery or peonage lacks plausibility.

10

Title 42, U.S. Code, Section 1985, does reach certain private conduct. The plaintiff must, however, factually plead a deprivation of rights—most pertinently here, the right to equal protection of the laws. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971) ("The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all").[6]

No such deprivation is plausibly alleged by this complaint. No case is cited for the proposition that an employer's use of an employee's name, as currently recognized by the federal government for payroll tax purposes, violates the civil rights statutes. Nor are any facts pled to indicate that Impax's motive is discriminatory. Indeed, the Complaint itself, and its exhibits, set forth the employer's nondiscriminatory motive (compliance with federal law), as well as its agreement to use the plaintiff's new name in contexts where federal law does not require it to do otherwise.

To the extent the Complaint asserts a claim under 42 U.S.C. §§ 1983 and 1985, it is dismissed.

### 4. Miscellaneous claims

The Complaint cites the New Jersey Identity Theft Protection Act ("NJITPA"), N.J. Stat. Ann. § 56:11-44 *et seq*. It alleges that Impax is committing "identity theft" because it is not using plaintiff's preferred name. The NJITPA deals with keeping Social Security numbers private and secure,

---

6     More formally:

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) [(citing *Griffin, supra*)].

*Russo v. Voorhees Twp.*, 403 F. Supp. 2d 352, 359 (D.N.J. 2005).

governs security freezes on consumer reports, and so on. It is unrelated to anything alleged here.

Plaintiff alleges claims for violations of international declarations and treaties, such as "The Declaration of Human Rights – 1945," "The Declaration of the Rights of the Child of 1959," and "The Declaration on the Rights of Indigenous People." He does not allege facts connecting his grievance to those documents; he does not establish that they give right to a federal-court cause of action.

Other plaintiffs identifying themselves as Moorish Citizens have asserted similar claims, which have been summarily dismissed as frivolous. *See, e.g., Bey v. Zajeski*, No. 02 C 2996, 2003 U.S. Dist. LEXIS 1465, at *2 n.2 (N.D. Ill. Jan. 29, 2003) ("As to these unusual, non-federal claims, the court dismisses them as frivolous under 28 U.S.C. § 1915(d). El Bey has offered no evidence that these claims have an arguable basis in fact or law, and therefore they may be dismissed sua sponte."); *Bey v. Sylvester*, No. 15-cv-11398, 2015 U.S. Dist. LEXIS 54427, at *2 (E.D. Mich. April 27, 2015) ("Among other things, the complaint alleges that defendants violated . . . the Declaration of the Rights of the Child, the Declaration of the Rights of Indigenous Peoples, and the Declaration of Human Rights, and seeks enforcement of the Divine Constitution and By-Laws of the Moorish Science Temple of America. These claims simply are not cognizable.").

I, too, can discern no cognizable claim in these generalized allegations. They will be dismissed.

### 5. Dismissal without prejudice

Finally, Impax requests that the dismissal of the complaint be with prejudice.

The complaint is based on a single, central factual allegation that does not really lend itself to amendment, and as currently framed it is frivolous. Nevertheless, the Court of Appeals has instructed that ordinarily an initial dismissal should be without prejudice, particularly in a *pro se* case. *Accord*

12

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). I will dismiss the complaint without prejudice. I will not, however, prospectively authorize the filing of an amended complaint. Amendment shall be sought *via* a properly supported motion to amend under Fed. R. Civ. P. 15.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss of defendants Impax and Marino is GRANTED and the complaint is DISMISSED in its entirety, without prejudice to the filing of a motion to amend within 30 days. An appropriate Order shall accompany this Opinion.

Dated: February 14, 2017

_____
**KEVIN MCNULTY**
**United States District Judge**